### O. F. BRESEE v R. W. CRUMPTON.

*Action on Note—Assignment of Note without Endorsement—
Authority of Agent of Payee to Endorse Note—Unendorsed
Negotiable Paper—Equitable Owner of Note—Defenses.*

1. When no general authority to a clerk from his principal to endorse notes
   payable to the latter is shown, nor course of dealing from which
   such authority could be inferred, the fact that the clerk had en-
   dorsed other notes previously, with the sanction and approval of the
   payee, was no evidence sufficient to go to the jury in the trial of an
   action on a note that the clerk had authority to endorse the note to
   another.

2. The assignee of a negotia'le note endorsed by the clerk of the payee
   without authority is simply the holder of unendorsed negotiable
   paper and as such has, *prima facie*, the equitable title and can main-
   tain an action thereon under Section 177 of *The Code.*

3. The transferee of an unendorsed negotiable note (unless payable to
   bearer) takes the paper subject to all equities which the maker has
   against the payee.

4. In an action by the transferee of an unendorsed negot'able note against
   the maker, the latter may show, in evidence, the conditions upon
   which it was executed and delivered to the payee in order to show a
   failure of consideration, such evidence not being a contradiction of
   the terms of the written contract but proof of an additional verbal
   agreement.

5. Where a note was given to a local agent of an insurance company for
   the initial premium on a policy, to be cancelled and returned to the
   maker upon certain contingencies (which happened) and the note
   was immediately assigned without endorsement to a general agent
   of the Company; *Held,* that inasmuch as the Company would have
   held the note subject to the agreement between the maker and the
   local agent, the transferee (the general agent) who was fixed with
   notice that the note was a premium note, the property of the Com-
   pany, was not a holder without notice of what would have affected
   the note in the hands of the Company.

CIVIL ACTION tried before *Allen, J.,* and a jury at Spring
Term, 1897, of PERSON Superior Court, on defendant's
appeal from the judgment of a Justice of the Peace.    There

was a verdict for the defendant and from the judgment thereon plaintiff appealed.

*Messrs. W. W. Kitchin* and *A. L. Brooks*, for plaintiff (appellant).

*Messrs. Boone & Bryant*, for defendant.

CLARK, J.: The note was endorsed to the plaintiff by the plaintiff's clerk signing the payee's name, and there was no evidence that such clerk had authority from the payee to make this endorsement. The bare fact that he had endorsed Parker's name to other papers with his approval, taken alone, was not evidence to submit to the jury of authority to endorse this paper, for there was no general authority shown nor course of dealing from which it could be inferred. The plaintiff is therefore simply the holder of an unendorsed negotiable paper. As such, he has *prima, facie,* the equitable title and can maintain an action thereon under *The Code,* Sec. 177. *Carpenter* v. *Tucker,* 98 N. C., 316; *Kiff* v. *Weaver,* 94 N. C., 274; *Jackson* v. *Love,* 82 N. C., 405. But such transfer without endorsement (except in cases where the note is made payable to bearer) does not pass the legal title, *Jenkins* v. *Wilkinson,* 113 N. C., 532, and the transferee by not requiring the payee to endorse, is on notice and "is not a *bona fide* holder for value who takes the paper free from equities". 4 Am. & Eng. Enc. (2nd. Ed.), 250; *Album* v. *Perry,* 68 Maine, 232. "He therefore takes the paper subject to all equities that might be set up against the transferrer." Tiedeman Com. Paper, Sec. 247, and numerous cases cited in note 4. This distinction is fully discussed and pointed out in *Miller* v. *Tharel,* 75 N. C., 148, in which it is said: "The note sued on was not endorsed to the plaintiff but was assigned to him by an oral contract. It is true that under this assignment by virtue of our recent legislation (now *Code,* Sec. 177) the assignee may sue in our

Courts in his own name, as an equitable assignee or *cestui que* trust could formerly have done in equity; but he does not acquire by such an assignment the peculiar rights which by the law merchant, founded on the policy of promoting the circulation of promissory notes, attaches to an *endorsee* of such paper. All the authorities cited to sustain the proposition that a holder of a promissory note, taken under the circumstances stated (*i. e.* before maturity, for value and without notice), can recover against the maker notwithstanding any equitable or other defence he may have, apply only to a holder by an assignment recognized by the law merchant, *i. e.* an endorsee. The distinction between a title by assignment and by endorsement is stated in 2 Parsons on Bills, 52." See also Daniel Negotiable Instruments, Sec. 729. The opinion further cites in its support *Thigpen* v. *Horne*, 36 N. C., 20; *Lindsay* v. *Wilson*, 22 N. C., 85; *Whistler* v. *Foster*, 108 E. C. L., 248; *Haskill* v. *Mitchell*, 53 Maine, 468. *Miller* v. *Tharel* is quoted with the approval of this proposition. *Bank* v. *Michael*, 96 N. C., 53.

The plaintiff, therefore, being a mere assignee and not an endorsee, and not entitled to the protection of the law merchant as a *bona fide* holder of negotiable paper before maturity, stands in the shoes of Parker, the payee, and subject to whatever equities existed between him and the maker. The conditions upon which the note was given could be shown as between them. *Davidson* v. *Powell*, 114 N. C., 575; *Bank* v. *Pegram*, 118 N. C., 671. Parker was the local agent of the insurance company. As such, he solicited the defendant and procured him to insure in said company. By his insistence the defendant was persuaded to accept provisionally a policy of $2,000, and gave his note for the premium thereon upon an agreement that if the defendant, after seeing his wife, should prefer only a $1,000 policy, the first policy and premium note were to be cancelled, and the

new policy (and premium note) for the smaller amount was to be given. To show this was not contradicting the terms of the contract, but proving an additional verbal agreement. *Nissen* v. *Mining Co.*, 104 N. C., 309. In *Carrington* v. *Waff*, 112 N. C., 115, a cotemporaneous parol agreement was admitted that the note was given for commissions to be earned, and if not earned the note was to be returned—a state of facts somewhat similar to this, showing failure of consideration. His Honor instructed the jury that the evidence of the additional verbal agreement must be clear and satisfactory. The next day after the above agreement the defendant returned and informed Parker that he had seen his wife and would only take out the $1,000 policy. Parker admitted the agreement, but said that he had sent the note off to Bresee. Upon these facts, Parker could not recover, nor can Bresee (he not being an endorsee) be in any better condition.

There are other reasons why Bresee cannot recover. The note given by the defendant was a premium note for a policy of the insurance company and was its property. Parker was the local agent under Bresee who was the general agent of the company. Had the note been sent on to the company, it would have held it subject to the agreement made by its local agent. *Follette* v. *Insurance Co.*, 107 N. C., 240. The note being sent to Bresee, the general agent, he could be in no better condition and took it subject to the same equity. Of course, if the company had endorsed it before maturity to a third party for value and without notice, he would have held it discharged of the equity. The writing on the face of the note, "No. of Note 2821—No. of Policy 654, 971", did not destroy the negotiability of the note. Daniel, *supra*, Sec. 51a; Randolph on Com. Paper, Sec. 203; *Taylor* v. *Curry*, 109 Mass., 36. But it fixed Bresee, dealing with his sub-agent, with notice that it was a

premium note, and hence the company's property, and he was not a holder without notice of what would have affected the note in the hands of his principal.

The plaintiff's witness further showed that the note, on its face for a premium due the company, was applied on an account due the plaintiff individually by the sub-agent. Upon the authorities the plaintiff was in law neither a *bona fide* holder (as he took without endorsement) nor without notice, nor for value. It is unnecessary to consider the exceptions in detail. There was no conflict of evidence and the above presents the controverted propositions of law.

No error.